UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 07 CR 50058-5 |
| | ) | Judge Philip G. Reinhard |
| MARK O. COOPER | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT COOPER'S MOTION
TO SUPPRESS IDENTIFICATION**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, responds to defendant Cooper's motion to suppress identification as follows:

**I.　BACKGROUND**

Defendant stands charged in a multi-count indictment with one count of conspiracy to commit robberies affecting interstate commerce and one count of robbery affecting interstate commerce, both in violation of Title 18, United States Code, Section 1951(a), and one count of using a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A). Defendant has filed a motion seeking to suppress identifications of the defendant made by two victims/witnesses of a robbery at the Soto's Jewelry store on August 2, 2007.

On August 2, 2007, at approximately 5:47 p.m., three black males robbed the Soto's Jewelry store at 1126 S. Main Street in Rockford. The entered through the front door, pointed guns at one victim ("Victim 1"), and two of them jumped the counter. The robbers forced Victim 1 to the ground, and took a white gold necklace and four charms from the business, with an estimated value of $3,000. The robbers also dragged a second victim ("Victim 2") from the back room to the front counter area.

1

During the investigation of the robbery, Rockford Police detectives developed Michael Jackson, Charles Eubanks, and the defendant as suspects in the robbery. On August 7, 2007, Detectives Scot Mastroianni and Mark Jimenez met with Victim 1 at the Soto's Jewelry store. Detective Jimenez asked Victim 1 if she would be able to identify the suspects if she saw them again, and she told him that she would because they did not wear masks or anything to conceal their faces. Victim 1 told Detective Jimenez that one of the suspects was a prior customer of the store, which is how she recognized him. Victim 1 also told Detective Jimenez that one of the other suspects was named Mark Cooper, and that she had gone to school with Mark Cooper and had reviewed a yearbook and located him from that. Victim 1 also told Detective Jimenez that she also used to take the bus to school with Mark Cooper.

Detective Jimenez then had Victim 1 review the Rockford Police Department Line-up/Photo Spread Notice, which she did and signed at 1:45 p.m. A copy of that form is attached as Government Exhibit A. Detective Jimenez then showed Victim 1 a photo line-up that included a photo of Michael Jackson. Victim 1 immediately pointed to the photograph of Jackson and stated that Jackson was one of the suspects involved in both armed robberies to her business (the Soto's Jewelry store had also been robbed on July 13, 2007, a robbery that is the subject of other counts of the bill of indictment in this case not involving defendant Cooper). Victim 1 told Detective Jimenez that Jackson was the suspect that would come into the jewelry store to get his jewelry cleaned, and that he had been armed with a handgun during the more recent robbery. Victim 1 then signed the back of Jackson's photograph and placed her initials on the other five photos from the photo line-up. Detective Jimenez then presented two other photo line-ups to Victim 1 that included photos of Charles Eubanks and Martel Mullins, respectively. Victim 1 stated she did not recognize anyone in either photo line-up.

Also on August 7, 2007, Detective Jimenez interviewed Victim 2. Victim 1 assisted Detective Jimenez with conducting the interview in Spanish. Detective Jimenez, with Victim 1's assistance, reviewed the Rockford Police Department Line-up/Photo Spread Notice with Victim 2. Victim 2 advised he understood the form and signed it at 1:52 p.m. A copy of this form is attached as Government Exhibit B. Victim 2 was then shown the photo line-up which included a photo of Michael Jackson, and pointed to the photo of Jackson and said he was one of the suspects from the August 2 robbery. Victim 2 then signed the back of Jackson's photo and placed his initials on the other five photos in the line-up. Victim 2 was also shown the photo line-ups including photos of Eubanks and Mullins, and did not recognize anyone from either of those two photo line-ups.

On August 8, 2007, Detective Jimenez developed a photo line-up which included a photograph of the defendant, Mark O. Cooper. At approximately 2:55 p.m. on that date, he and Detective Eric Bruno went back to Soto's Jewelry. Detectives Jimenez and Bruno met with Victim 1 again on this date. Victim 1 again reviewed and signed the Rockford Police Department Line-Up/Spread Notice form, a copy of which is attached as Government Exhibit C. She was then shown the photo line-up containing the photograph of Mark Cooper. Victim 1 immediately pointed to the photograph of Cooper and said he was the person she knew by the name of "Mark Cooper," and that he was one of the persons who robbed her store on August 2, 2007. Victim 1 advised the detectives that Cooper jumped the jewelry counter along with another of the robbers. Victim 1 then signed and dated Cooper's photograph, and initialed the other five photographs in the photo line-up.

Detectives Jimenez and Bruno next met with Victim 2 on August 8. Detective Bruno, who speaks Spanish, assisted Victim 2 with any translation that he needed.[1] Victim 2 reviewed and signed the Line-Up/Spread Notice form (copy attached as Government Exhibit D), and was then shown the photo line-up which included a photograph of Mark Cooper. Victim 2 pointed to the photo of Mark Cooper and advised he was one of the suspects who jumped the jewelry counter during the August 2 robbery. Victim 2 then signed Cooper's photo and initialed the other five photos in the line-up.

## II.     MEMORANDUM OF LAW

The Due Process Clause prohibits identification testimony that derives from impermissibly suggestive procedures that may lead to an irreparably mistaken identification. *Stovall v. Denno*, 388 U.S. 293 (1967). Reliability is the key in determining the admissibility of identification testimony. *Neil v. Biggers*, 409 U.S. 188, 199 (1972). It is the defendant's burden to establish that the identification procedure was impermissibly suggestive. *Id.* Even if such a showing is made, the court may admit the identification testimony if, under the totality of the circumstances, the identification was reliable. *Id.*

> "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*Id. See also United States v. Downs*, 230 F.3d 272, 275 (7th Cir. 2000).

---

[1] Contrary to defendant's suggestion in his motion to suppress identification, no witness "was used as an interpreter in order to obtain an identification [of Cooper] by [Victim 2.]" Rather, Detective Bruno, a fluent Spanish speaker, provided any interpretation necessary during the showing of the photo line-up which included Mark Cooper to witnesses on August 8, 2007.

Defendant has not established that the identification procedure was impermissibly suggestive, nor will he be able to do so even with an evidentiary hearing. It is the defendant's burden to make this showing. As noted above, defendant misstates in his motion that one witness was used as an Spanish-language interpreter for another witness when the police showed the photo line-up including Mark Cooper to witnesses on August 8, 2007. That is simply not true. The investigating detectives ensured that the witnesses understood that a suspect may or not be in the photo line-ups shown to them, and had them review and sign the Rockford Police Department Photo Line-up/Spread Notice forms which are attached hereto. Defendant does not suggest that anything about the photo line-up itself was impermissibly suggestive. Instead, defendant, in conclusory fashion, simply states that "the line-up procedure utilized in connection with the [victim's] identifications of defendant were so tainted and unduly suggestive as to have lead to a very substantial likelihood of irreparable misidentification," and that "the identifications of the defendant were unreliable." Defendant then suggests that "the full and proper examination of the issues presented herein require an evidentiary hearing."

As noted above, defendant's representation regarding one witness being used by the detectives as a Spanish-language interpreter for another witness during the photo line-up procedure *involving this defendant* is not true. Detective Bruno performed that role. Defendant's only other basis for suppression is that Victim 1 identified the defendant by name after having claimed to have seen his picture in a high school yearbook. In fact, in a signed written statement given to the police on August 21, 2008, Victim 1 stated as follows:

> One of the [robbers] I went to school with and took the bus with, his name is Mark Cooper. He was one of the guys that jumped the counter and he dragged [another victim] from the back room to the front of the store. I know it was Mark Cooper because he wasn't wearing anything to cover his face. Mark was wearing a black t-shirt and he was the one who went inside the jewelry cases and took four charms and a gold necklace that also had a charm on it.

Detective Jimenez's report states that on August 7, 2007, Victim 1 told him and Detective Mastroianni "that one of the other suspect's name was Mark Cooper," and that "she went to school with Mark Cooper and that she reviewed a yearbook and located him from this." Even assuming that defendant's assertion in paragraph 3 of his motion to suppress identification is true, that "the defendant was not pictured in the yearbook from high school," that is an area for cross-examination of Victim 1 at trial, not a basis for suppression of Victim 1's identification of defendant on the basis that the line-up procedure was impermissibly suggestive.

Simply put, defendant's only claim that might arguably warrant an evidentiary hearing, that one witness was used by the police as a Spanish-language interpreter in order to assist a second witness in viewing the photo line-up containing a photograph of defendant, is not true. No evidentiary hearing is merited here. Evidentiary hearings on suppression motions are only necessary when the party requesting the hearing identifies a significant, disputed factual issue that must be resolved. *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005); *United States v. Wilson*, 169 F.3d 418, 426 (7th Cir. 1999). Defendant has not done so, and the government requests that this court deny defendant's motion without an evidentiary hearing.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

BY: _____/s_____
MICHAEL F. IASPARRO
Assistant United States Attorney
308 West State Street - Suite 300
Rockford, Illinois 61101
(815) 987-4444

**CERTIFICATE OF SERVICE**

      The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

      United States' Response To Defendant's Motion To Suppress Identification

was served pursuant to the district court's ECF system on April 23, 2008.

      /s  
MICHAEL F. IASPARRO  
Assistant United States Attorney  
308 West State Street - Suite 300  
Rockford, Illinois 61101  
(815)987-4444